**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Ricky St. Julien,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No. 4:25-cv-01827** |
| **v.** | § | |
| | § | |
| **Energera America, INC. f/k/a,** | § | |
| **Frac Shack America, Inc.,** | § | |
| | § | |
| **Defendant.** | § | **(JURY TRIAL DEMANDED)** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Ricky St. Julien, filing his First Amended Complaint complaining of Defendant, Energera America, Inc. f/k/s. Frac Shack America, Inc., and in support thereof would show as follows:

**I.
JURISDICTION, PARTIES AND VENUE**

1.      This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to (1) 28 U.S.C. §1446 and (ii) 28 U.S.C. §1331.

2.      Ricky St. Julien resides in Pearland, Texas.  Plaintiff is black and is protected by 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended.  Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

3.      Energera America, Inc. operates in Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes.

4.      Energera America, Inc. employed more than fifteen (15) regular employees.

-1-

5.     The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

6.     Whenever in this complaint it is alleged that Defendant Energera America, Inc. did any act or thing, it is meant that Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, agents, servants, employees, or representatives.

7.     The acts of management were performed while in the employment of Defendant, to further Defendant's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Plaintiff, Ricky St. Julien, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on or about August 24, 2023.  In that Charge, No. 453-2023-01075, and any amendments and/or attachments thereto, Plaintiff asserted that Defendant discriminated against him because of his race and retaliated against him for opposing such.

9.     Therefore, Plaintiff was forced to file this suit in order to protect his employment rights.  Plaintiff exhausted his administrative remedies where applicable and filed this suit within the statutory limitations period.

10.     Defendant removed this suit to federal court.

### III.
### FACTUAL BACKGROUND

*Foreseeability of the Problem*

11.     The United States Equal Employment Opportunity Commission ("EEOC"), an agency responsible for enforcing federal employment laws similar to the state laws in this suit, noted in a report that 75% of employees who spoke out against workplace mistreatment faced some form of retaliation.[1]

12.     A Glassdoor survey reports that 61%, or about three (3) in five (5), U.S. employees have witnessed or experienced discrimination in the workplace.[2]

13.     That same survey reports that 42% of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[3]

14.     A report by Ethics & Compliance Initiative found that when employees at all levels are held accountable, retaliation is not as prevalent; to be sure, the retaliation rate is only 16% when managers are held accountable compared to approximately 40% when managers are not held accountable.[4]

---

[1] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation; Events Following Interpersonal Mistreatment in the Workplace;* 8:4 J. Occupational Health Psychol. 247, 255 (2003)).

[2] https://about-content.glassdoor.com//app/uploads/sites/2/2019/10/Glassdoor-Diversity-Survey-Supplement-1.pdf.

[3] *Id.*

[4] https://www/ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation.

*The purpose of the Law*

15.    The anti-discrimination laws' primary objectives are prophylactic, chiefly aimed not to provide redress but to **avoid** harm.

16.    Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

17.    The right to expect that corporations will hire Human Resources representatives qualified to follow discrimination and retaliation laws is essential to our community.

18.    The right to expect that corporations will adequately train managers and non-management employees to follow discrimination and retaliation laws is essential to our community.

19.    The right to expect that corporations will supervise managers and non-management employees to follow discrimination and retaliation laws is essential to our community.

20.    The right to expect that corporations will prevent any form of discrimination or retaliation against persons who report discrimination is essential to our community.

21.    The right to expect that corporations must care about workplace laws to protect us from harm is essential to our community.

*Defendant's System Failure*

22.    During Plaintiff's tenure, Defendant knew that discrimination and retaliation were foreseeable as a potential problem in the workplace.

-4-

23. Defendant hires managers and non-managers who are not qualified to follow policies prohibiting discrimination and retaliation laws.

24. Defendant fails to adequately train its managers and non-managers to follow policies prohibiting discrimination and retaliation laws.

25. Defendant fails to supervise its managers and non-managers to ensure they follow policies prohibiting discrimination and retaliation laws.

26. Defendant hires human resources personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

### *Consequences of System Failure*

27. Because Defendant fails to hire qualified human resource personnel, Defendant discriminates and retaliates against employees by way of maltreatment and then terminates the employee after the employee reports violation concerns.

28. Because Defendant fails to hire qualified managerial and non-managerial personnel and adequately train and supervise them, Defendant discriminates and retaliates against employees by way of maltreatment and then terminates the employee after the employee reports violation concerns.

29. Defendant discriminated against and fired Plaintiff for opposing discrimination in the workplace.

30. Although foreseeable, Defendant failed to prevent discrimination against the plaintiff.

31. Although foreseeable, Defendant failed to prevent retaliation against the plaintiff when he reported discrimination.

32. Before the plaintiff's termination, Defendant failed to conduct a fair investigation of his race discrimination complaints.

33. Before the plaintiff's termination, Defendant chose not to talk to all important witnesses in its investigation into his race discrimination complaints.

34. Before the plaintiff's termination, Defendant chose not to look at all important documents in its investigation into his race discrimination complaints.

35. Before the plaintiff's termination, Defendant chose not to adequately train managers and non-managers on the signs to recognize discrimination.

36. Before the plaintiff's termination, Defendant chose not to adequately train managers and non-managers on the signs to recognize retaliation.

37. Before the plaintiff's termination, Defendant failed to monitor the workplace for signs of discrimination.

38. Before the plaintiff's termination, Defendant failed to monitor the workplace for signs of retaliation.

### History of Discrimination and Retaliation

39. In the last 10 years, the plaintiff is not the only person to have complained of race discrimination at Defendant.

40. In the last 10 years, the plaintiff is not the only person to have complained of retaliation at Defendant.

### Employment History

41. Defendant is a Midland, Texas based company.

42. In the simplest of terms, Defendant provides fuel to different fracking machines, work vehicles, and generators.

43. Defendant required its employees to travel in and out of Texas to service its customers.

44. In so doing, Defendant provided the employees with detailed information concerning their new work location and lodging information.

45. Thereafter, the employees were to pay their own travel expenses to and from said new assignment.

46. Defendant hired Plaintiff St. Julien to work as a helper on or about March 1, 2022. His Field Lead was Andre Gordon.

47. In or about June of 2022, Defendant subjected Plaintiff St. Julien to a strenuous evaluation to test his proficiency in the fuel shack.

48. During his evaluation, Plaintiff St. Julien performed so well that Field Lead Gordon essentially remarked, "I like you. You did good. You get your blue hat. I'm promoting you. You a smart nigger. You're not like the rest of them. They're stupid."

49. Consequently, Defendant promoted Plaintiff St. Julien to Field Operator with a pay raise.

50. Field Lead Gordon's racial insults greatly diminished Plaintiff St. Julien's exuberance with performing well and earning said promotion.

51. Plaintiff St. Julien continued to perform satisfactorily.  He was the consummate team player, as he worked in various locations in West Texas, Louisiana, New Mexico and North Dakota and often took last minute assignments in a different state.

52. On or about April 26, 2023, Plaintiff St. Julien had a workplace accident.

53. On or about May 1, 2023, Defendant - through Senior Operations Coordinator Ciara Wascher - asked Plaintiff St. Julien "to work a double and cover the site [he was] on through the next hitch?"

54. That assignment or hitch was in North Dakota.

55. On or about May 6, 2023, Defendant assigned Laurence Ashurst (white) to work with Plaintiff St. Julien. Mr. Ashurst constantly used the word "nigger." Plaintiff summoned up the courage to tell Mr. Ashurst that he was offended by his use of the word "nigger." Mr. Ashurst ignored Plaintiff's concerns and continued saying "nigger."

56. Upon information and belief, Mr. Ashurst and Plaintiff St. Julien both reported to Defendant that their shared work truck was unsafe. Plaintiff St. Julien, Fleet Manager Steve Todd, Brian Haskins, Ashley Day and others were in communication about the "badly" shaking work truck.

57. Defendant provided Mr. Ashurst with a safe, new truck while in North Dakota. Defendant failed to provide Plaintiff St. Julien with another truck. Plaintiff was forced to continue to use the unsafe truck that Defendant knew was unsafe.

58. Defendant also required Plaintiff St. Julien to rig in and rig out by himself. This was strenuous work with no additional pay.

59. Moreover, Plaintiff St. Julien observed that other employees (non-black) were assigned this task with the assistance of other employees.

60. Working and living so closely with Mr. Ashurst and his racially offensive rants coupled with an unsafe work truck negatively impacted Plaintiff St. Julien.

61. On or about May 6, 2023, Plaintiff St. Julien emailed Human Resources Generalist Kendel Repola and copied several others. In his email, Plaintiff noted "... I have

decided to go back home to Texas today. Unfortunately, I do not feel I am mentally fit for duty after having the worse (sic) experience with this company since being employed. Starting from the most uncomfortable stay at Target lodge, to what I believe has been unsafe work practices at work, racial discrimination, and unfair pay, I have chosen my mental peace as a priority."

62.    Plaintiff St. Julien left the assignment or hitch in North Dakota early.

63.    Plaintiff St. Julien and Human Resources Generalist Repola spoke via phone.  He shared with her his experiences starting with Field Lead Gordon and *his* racially offensive remarks and ending with Mr. Ashurst and *his* racially offensive remarks.

64.    Plaintiff St. Julien did not hear back from Human Resources Generalist Repola about his complaints.

65.    He awaited a new assignment.

66.    On or about May 16, 2023, Defendant emailed Plaintiff St. Julien that there was no "site assignment for [him] at this time."

67.    Defendant would not offer Plaintiff St. Julien a new assignment until many weeks thereafter. Consequently, Plaintiff St. Julien was without pay for quite some time.

68.    Plaintiff St. Julien's work assignments thereafter seemed short, out of town, and/or physically strenuous.

69.    After returning from North Dakota, the only assignment Plaintiff St. Julien could not accept was that which required out-of-state travel. He simply could not afford to pay his way to the site assignment, as was required. In response thereto, Plaintiff St. Julien requested work closer to home and/or more affordable.

70.    On or about May 22, 2023, Defendant issued Plaintiff St. Julien a verbal warning for the April 26, 2023 accident.

71.    On or about June 28, 2023, Defendant received a letter from Plaintiff St. Julien's attorney.

72.    On or about August 24, 2023, Plaintiff St. Julien filed a charge of discrimination with the EEOC.

73.    On or about September 15, 2023 at 3:53 p.m., Director of Human Resources Laura Handler left a voice mail message for Plaintiff St. Julien.

74.    On that same day (September 15, 2023), Defendant - via Director of Human Resources Laura Handler - terminated Plaintiff St. Julien. He was terminated allegedly because of "excessive absenteeism and lack of communication."

75.    Plaintiff St. Julien disputes that is the real reason for his termination.

76.    Defendant failed to communicate to Plaintiff St. Julien the specifics concerning his last assignment.

77.    The effect of the practices complained of herein have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and his opposition to discrimination.

**IV.**
**CAUSES OF ACTION**

RACE DISCRIMINATION PURSUANT TO **42 U.S.C. §1981 And TITLE VII**

78.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

79.    Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with and impacting Plaintiff's work performance, pay, assignments, employment record, work equipment, dignity, advancement, continued employment, and other such employment terms and conditions  because of his race.

80.    This intentional interference consisted of discrimination of a continuous nature.

81.    Defendant, through its agents, supervisors, or employees discriminated against Plaintiff, which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

82.    The above-described acts on Defendant's part caused Plaintiff's substantial injury and damage.

### RETALIATION PURSUANT TO  42 U.S.C. §1981 And TITLE VII

83.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

84.    After complaining to management of racially motivated maltreatment, hiring an attorney who communicated to Defendant, and filing a charge of discrimination, Plaintiff was subsequently and repeatedly harangued, ignored, disciplined, kept off the schedule resulting in lower pay, and terminated. Such has impacted Plaintiff's work performance, pay, assignments, employment record, work equipment, dignity, advancement, continued employment, and other such employment terms and conditions because of his opposition to race discrimination.

-11-

85.    As herein alleged, Defendant illegally retaliated against Plaintiff because he opposed discrimination and complained of same.  Defendant had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of the anti-retaliation provisions.

86.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

87.    The above-described acts on Defendant's part were undertaken in violation of the aforementioned statutes and proximately caused Plaintiff substantial injuries and damages.

## V.
## JURY DEMAND

88.    Plaintiff request that this action be heard before a jury.

## VI.
## DAMAGES

89.    Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in his occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer economic losses including but not limited to lost wages and benefits and future wages and benefits, humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies, and procedures of Defendant.  Accordingly, Plaintiff seeks all general, special, incidental, punitive, and consequential damages in an amount to be proved at trial including but not

limited to lost wages/benefits, future wages/benefits, compensatory damages, punitive damages and attorney's fees.

90.     Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him in these causes of action Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

91.     Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living.  Accordingly, Plaintiff seeks all general, special, incidental, and punitive consequential damages as shall be proven at trial.

92.     Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant do not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendant for:

a.      Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race and in retaliation for

opposing same.

b.  All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.  Compensatory damages for pain and mental suffering in the past and future;

d.  Reasonable attorney's fees, with conditional awards in the event of appeal and punitive damages;

e.  Pre-judgment interest at the highest rate permitted by law;

f.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g.  Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

h.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,
/s/ Katrina S. Patrick

_____

**Katrina S. Patrick**
Federal Bar No. 22038
Law Offices of Katrina Patrick
6575 West Loop South,
Suite 500
Bellaire, Texas 77401
Telephone: (713) 796-8218

**ATTORNEY FOR PLAINTIFF**
**Ricky St. Julien**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August 2025, this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service will be further made in compliance with said protocols.

/s/ Katrina S. Patrick

_____

**Katrina S. Patrick**

-15-